**UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DAVID ALLEN FREIS | ) | Case No. 06-30393 |
| and SARA DELAINE FREIS, | ) | |
| | ) | |
| Debtors. | ) | |

**AMENDED MEMORANDUM OPINION**

On September 28, 2006, the Debtors filed for relief under chapter 7 of the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[1] On January 4, 2007, the United States Trustee ("UST") filed a motion to dismiss the Debtors' bankruptcy case under 11 U.S.C. § 707(b)(2) and (3). The Court held a hearing on the UST's motion on April 19, 2007, at which time the parties presented the Court with a "trial stipulation" which narrowed the issues presented for the Court's consideration. Pursuant to that stipulation, there are four issues before the Court; the first three relate to § 707(b)(2), and the last one pertains to § 707(b)(3).

The first issue is whether federal "child tax credits" should be deducted from a debtor's annual tax liability when calculating a debtor's average monthly tax expense for purposes of the means test. In this case, the Debtors are expected to receive a combined federal and state tax refund of approximately $2,609 for the current tax year. Assuming no change in the tax laws or the composition of the Debtors' family, $2,000 of that tax refund will be attributable to the federal child tax credit. The UST contends that the amount stated on line 25 of the Debtors' means test worksheet (Official Form B22A) should be reduced by the monthly pro rata amount of the expected tax refund, which would be approximately $218. The Debtors respond that the child tax credit should not be considered in the calculation of their actual average tax expense, and that if the $2,000 attributable to the child tax credit is excluded, the debtors' average tax expense is within a few dollars of the amount stated on Official Form B22A, which figure was taken directly from their payment advices (paychecks). In other words, they maintain that they are not "over-withholding" taxes on a monthly basis in an effort to artificially inflate their refund or to skew the results of the means test.

---

[1] Pub. L. No. 109-8, 119 Stat. 37.

-1-

The second issue is whether a debtor may take a deduction on the means test for payments on a 401(k) loan. The Debtors have claimed a $481 deduction monthly for the allegedly mandatory repayment of a 401(k) loan. The Trustee contends that this deduction is impermissible because the repayment of the 401(k) loan in this case is not mandatory.

The third issue addresses the Debtors' 401(k) loan repayment from another angle, positing the question: "Is the repayment of a 401(k) loan a 'special circumstance' under § 707(b)(2)(B), capable of rebutting a presumption of abuse under § 707(b)(2)(A)?" Although the Debtors haven't actually advanced this argument, the Trustee, in anticipatory rebuttal, argues that the Debtors cannot justify their deduction for the repayment of the 401(k) loan as a special circumstance under § 707(b)(2)(B) because it is dissimilar to the examples of special circumstances provided in the statute.

The final issue presented in this case narrows the focus to the particular circumstances surrounding the Debtors' repayment of their 401(k) loan. The Debtors' 401(k) loan will be paid off in less than a year. Once that loan is paid off, the Debtors, arguably, will have an additional $481 in disposable income every month. If the Debtors were to pay that money into a chapter 13 plan, which for these above-median income Debtors would run sixty months, the Debtors would be able to repay at least $23,088, or 41%, of their unsecured debt. The UST contends that permitting the Debtors to remain in a chapter 7 bankruptcy in the face of these circumstances would constitute an abuse of chapter 7's provisions. Therefore, she argues, the case should be dismissed pursuant to § 707(b)(3).

Although a discussion of all of these issues might shed some necessary light on several of BAPCPA's relatively unlit corners, the Court does not need to rule on the first three dealing with § 707(b)(2) because the Court finds that the Debtors' ability to devote more than $20,000 toward the repayment of their unsecured debt in a hypothetical chapter 13 plan clearly warrants the dismissal of this case as an abuse of the provisions of chapter 7 by application of the totality of circumstances test set forth in § 707(b)(3).

**FACTUAL BACKGROUND**

The Court confines its recitation of the background to facts relevant to the issue delimited above.

The Debtors are a married couple with two dependents. They have annualized current monthly income ("CMI") of $81,837.72. The average median income for a family of four in Missouri is $63,847. The Debtors' debts are primarily consumer debts and their non-priority, unsecured debt totals $55,947.16.

In February 2003 Debtor David Freis ("Freis") borrowed $14,000 from his 401(k) Plan. As a condition of the loan, Freis agreed to repay the loan through automatic deductions from his paycheck. According to Line 26 of the Form B22A filed by the Debtors, Freis is repaying the loan at a rate of $481 per month.[2] The human resources specialist at Freis's employer testified that the loan will be paid off within a year, and the 401(k) loan documents confirm this, showing the loan's maturity date as February 18, 2008.

**DISCUSSION**

In determining whether a case should be dismissed for abuse under § 707(b)(1), in which the presumption of abuse of § 707(b)(2) does not arise or is rebutted,[3] the Court considers, "(A) whether the debtor filed the petition in bad faith or, (B) [whether] the totality of the circumstances ... of the debtor's financial situation demonstrates abuse."[4]

In this case, the UST does not allege that the Debtors have filed their petition in bad faith; rather, she relies upon subsection (B), arguing that the totality of circumstances of the Debtors' financial condition warrants the dismissal of the case for abuse. In particular, the UST contends that the Debtors' ability to repay a significant portion of their unsecured debt after the 401(k) loan is paid off supports a finding of abuse under § 707(b)(3). The Court agrees.

---

[2] According to the 401(k) loan documents, the loan was to be repaid in 260 weekly installments of $62.73, which translates to a monthly payment of approximately $271. No explanation has been given for the discrepancy between this amount and the $481 monthly payment the Debtors report making on the loan.

[3] Or, as is the case here, when the court chooses to rule the case on the basis of § 707(b)(3) regardless of whether the presumption of abuse arises or is rebutted under § 707(b)(2).

[4] 11 U.S.C. § 707(b)(3).

Although some courts have held that the ability to repay factor must be coupled with other factors in order to find abuse under § 707(b)(3)'s totality of circumstances test,[5] this Court believes that a debtor's ability to pay may, in some circumstances, be dispositive of the Debtors' abuse.[6] Here, a finding of abuse is warranted based on the significant amount of money and percentage of unsecured debt the Debtors would have the ability to pay in a chapter 13 bankruptcy case.

Moreover, the Debtors have not argued against this approach. In fact, a review of the pleadings and transcript of the hearing indicates that the Debtors have not offered any arguments in opposition to the Trustee's contention that a debtor's ability to pay creditors is sufficient to establish the Debtors' abuse under § 707(b)(3), or to the Trustee's contention that these Debtors will, in fact, have the ability to pay their creditors a substantial sum of money after the 401(k) loan is paid off.[7]

Finally, the Court notes, by way of further support, that its holding here is consistent with the holding in *In re Lenton*,[8] a case with an extremely similar fact pattern. In *Lenton* the debtor had two retirement plan loans: one was scheduled to be paid off in 18 months, resulting in an additional $472 per month in disposable income for the remaining 42 months of a hypothetical 60-month chapter 13 plan, and the other loan was scheduled to be paid off in 25 months, resulting in an additional $364 per month available for the final 17 months of the plan. This additional income would have paid 57% of the debtor's unsecured debt. Based on these facts, the *Lenton* court

---

[5] See *In re Deaton*, 65 B.R. 663, 665 (Bankr. S.D. Ohio 1986) (other factors besides mere fact that debtor has capability of funding a Chapter 13 plan are needed to find substantial abuse); *In re Shands*, 63 B.R. 121, 124 (Bankr. E.D. Mich.1985) (ability to pay 100% of debt within 3 years, when coupled with some egregious circumstance, is sufficient to deny Chapter 7 relief).

[6] *See In re Kelly*, 841 F.2d 908 (9th Cir.1988). A few bankruptcy courts in other jurisdictions appear to have adopted this per se rule. *In re Edwards*, 50 B.R. 933 (Bankr.S.D.N.Y.1985) (debtors were discharged of debts under Chapter 7, but court enunciated rule that ability to pay 100% of debts in three years per se constitutes substantial abuse); *In re Struggs*, 71 B.R. 96 (Bankr.E.D.Mich.1987) (holding that if a debtor can repay a meaningful part of his debt in a Chapter 13 plan, his Chapter 7 petition should be dismissed). Prior to the passage of the BAPCPA amendments in 2005, the statute required a finding of substantial abuse before a case could be dismissed; the BAPCPA amendments deleted the word "substantial" from § 707(b)(1) and (3).

[7] In their post-trial brief, the Debtors argue for the first time that they will not have any additional disposable income after the 401(k) loan is repaid because they will need to replace an aging automobile. This argument is outside the scope of issues permitted in the post-trial briefs, and, moreover, is wholly without evidentiary support in the record.

[8] 358 B.R. 651 (Bankr. E.D. Penn. 2006).

concluded that the totality of circumstances of the debtor's financial situation supported a finding that the case constituted an abuse of the provisions of chapter 7 of the Bankruptcy Code.[9] Such is the situation in the case now before the Court.

## CONCLUSION

Therefore, for the reasons stated above, the Court finds that, upon consideration of the totality of the circumstances of the debtor's financial situation, this case should be dismissed because it constitutes an abuse of the provisions of chapter 7 of the Bankruptcy Code, specifically § 707(b)(3). The effective date of the order will, however, be stayed for 30 days to permit the Debtors to convert their case to one under chapter 13 and to propose a plan consistent with this Memorandum Opinion. If the Debtors elect to convert to Chapter 13, the order of dismissal will be deemed vacated.

A separate order consistent with this Memorandum Opinion shall be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 18th day of May 2007.

                                            /s/   Jerry W. Venters
                                            United States Bankruptcy Judge

Copy of the foregoing mailed electronically or
conventionally to:
J. Kevin Checkett
Sherri L. Wattenbarger

---

[9] *Id.* at 662-63.